CYNDY DAY-WILSON, ESQ. (*SBN 135045*)
DW LAW
628 H Street
Eureka, CA 95501
Telephone: (707) 798-5048
Facsimile: (707) 445-2339
cdaywilson@daywilsonlaw.com

Attorney for Plaintiff Cathie Childs

IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

**CATHIE CHILDS**, an individual,

Plaintiff,

vs.

**HUMBOLDT COUNTY, a political subdivision of the State of California; SCOTT MILES, in his capacity as Interim County Counsel for the County of Humboldt; and, DOES 1 THROUGH 10,**

Defendants.

**Case No.:**

**COMPLAINT FOR VIOLATION OF 42 U.S.C. § 1983 [RETALIATION FOR EXERCISING FREE SPEECH]; VIOLATION OF THE WHISTLEBLOWER PROTECTION LAW [CAL. LABOR CODE SECTION 1102.5]; WRONGFUL DISCHARGE IN VIOLATION OF PUBLIC POLICY; VIOLATION OF CAL. GOV. CODE § 12940 [RETALIATION, GENDER DISCRIMINATION]; VIOLATION OF CAL. LABOR CODE §§ 201, 203; VIOLATION OF THE TOM BANE CIVIL RIGHTS ACT [CAL. CIVIL CODE SECTION 52.1]; and VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964 [GENDER DISCRIMINATION, HOSTILE WORK ENVIRONMENT, HARASSMENT]**

**DEMAND FOR JURY TRIAL**

Plaintiff, by and through her attorney of record, Cyndy Day-Wilson, complains, alleges and avers of Defendants as follows:

**JURISDICTION AND VENUE**

1. This is an action for damages to secure protection of and to redress deprivation of rights secured by 42 USC § 1983, providing for redress for the denial under color of statute, ordinance, regulation, custom or usage of rights, privileges, and immunities secured to Plaintiff by the Fourteenth Amendment to the Constitution of the United States namely, the freedom of speech; a violation of the Whistleblower Protection law California Labor Code §1102.5; a violation of The Tom Bane Civil Rights Act, California Civil Code § 52.1; and, a violation of California Government Code ("CGC") §12960, the Fair Employment and Housing Act prohibition on gender discrimination.

2. Jurisdiction of this Court is invoked pursuant to 28 USC § 1331 and 1343; 42 USC §1983; and, questions of federal constitutional law. Pendent and supplemental jurisdiction over Plaintiff's state law claims is pursuant to 28 U.S.C. §1367.

3. The unlawful practices alleged below were and are being committed in the State of California, County of Humboldt and thus venue is proper in the Northern District of this Court.

4. As to the second cause of action, for violation of California Labor Code Section 1102.5, and the fourth cause of action, for violation of California Civil Code Section 52.1, Plaintiff filed a claim for damages pursuant to California Government Code Section 945.4. Said claim was filed and served on January 20, 2023 with Defendant County of Humboldt.

5. The County rejected this claim on March 6, 2023. Plaintiff exhausted her administrative prerequisites and has timely filed this action within six months of the rejection.

6. As to the third cause of action, on September 6, 2022 Plaintiff filed a complaint for discrimination with the California Department of Fair Employment and Housing pursuant to California Government Code Section 12960 et. seq.

7. Plaintiff obtained a right to sue letter from the California Department of Fair Employment and Housing on October 12, 2022 which stated that Plaintiff had one year from the date of issuance to file a lawsuit.

8. Plaintiff also filed a complaint with the United States Equal Employment Commission and sought a right to sue letter under Title VII of the Civil Rights Act of 1964 against the County and other County personnel.

9. Plaintiff obtained a right to sue letter from the United States Equal Employment Opportunity Commission on March 13, 2023. The County was also provided with a copy of the right to sue letter by the United States Equal Employment Opportunity Commission.

10. On June 9, 2023, Plaintiff served a copy of the complaint and right to sue letter on Defendant Humboldt County via certified return receipt mail. Plaintiff also served a copy of the complaint upon the U.S. Equal Employment Opportunity Commission. Plaintiff has thus exhausted her administrative prerequisites and timely filed this lawsuit.

## PARTIES

11. Plaintiff resides in Humboldt County, California. She was formerly employed by the County of Humboldt as a Deputy County Counsel.

12. Defendant Humboldt County is a political subdivision of the State of California and operated by an elected Board of Supervisors. (Government Code Section 25207.)

13. Defendant Scott Miles is an individual residing in the County of Humboldt and currently serves as Interim County Counsel for the County of Humboldt. Mr. Miles was Plaintiff's immediate supervisor in the Office of County Counsel.

14. Plaintiff is ignorant of the true names and capacities of defendants sued herein as DOES 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained.

## STATEMENT OF FACTS

15. Plaintiff was employed by the County as a Deputy County Counsel from October 4, 2021 until her termination via e-mail on September 23, 2022.

16. In September 2021, Plaintiff applied and interviewed for a "Deputy County Counsel I – IV" position with an opening date of August 16, 2021. She interviewed with then-County Counsel Jefferson Billingsley and then-Assistant County Counsel Scott Miles. Plaintiff

was offered the position of Deputy County Counsel IV, Step D during the interview by Mr. Billingsley, and formally accepted the offer in mid-September.

17. The advertised position contained the following "EXAMPLES OF DUTIES," which closely matched Plaintiff's previous experience legally representing local governments in Texas:

a. Advises County departmental management concerning their respective duties, powers, functions and obligations;

b. Performs a wide range of legal work in such areas as juvenile, child welfare, criminal, public guardian, special districts and mental health;

c. Researches legal problems and prepares opinions, ordinances, resolutions, contracts, leases, permits and other legal documents;

d. Prepares and tries routine to difficult cases, often involving a specialized body of law;

e. Represents the County in administrative hearings before boards and commissions and state and federal agencies;

f. Assists other attorneys in all phases of legal work;

g. Attends County departmental, board and commission meetings to provide legal advice on a variety of matters;

h. Investigates and prepares reports regarding claims against the County;

i. Reviews ordinances, resolutions, contracts and other documents for legal sufficiency; recommends modifications as required;

j. Maintains accurate records and files and compiles reports of work performed;

k. Monitors legal developments, including proposed legislation and court decisions; evaluates their impact on County operations and recommends appropriate action;

l. Directs the work of professional and support staff as assigned.

18. Among other things, the position also required skills in: "Preparing clear, concise and legally sufficient resolutions, ordinances, contracts, leases, permits, reports, correspondence and other written materials."

19. In Mr. Billingsley's September 9, 2021 e-mail to the County Administrative Office, Mr. Billingsley explained wanting to bring Plaintiff in at the County Counsel IV, Step D level (the second highest Deputy County Counsel salary level) as follows: "…I have an applicant with over 30 years as an attorney and decades of government experience that I believe will be an excellent fit for our office. With our office's approval, I would like to offer her the position of Attorney VI [sic] at step D. I would like to extend at IV(D) due to Ms. Childs's **extensive experience and history with government law**. Please let me know as soon as you can as Ms. Childs have [sic] several interviews set and I would like to make her an offer as soon as possible." (Emphasis added.)

20. Based on Mr. Billingsley's offer, pleasant exchange during the interview, and the job description in the County's posting, Plaintiff accepted and moved to Humboldt County, California **solely** for this senior attorney position.

21. Plaintiff relocated from out-of-state to California on October 3, 2021 and started the position on October 4, 2021. Plaintiff moved her personal belongings on October 10 through 11, 2021, having to place her belongings in storage while residing in different Air B&Bs until she was able to secure housing in Humboldt County in November 2021.

22. When Plaintiff arrived at the County, she was assigned primary responsibility for a number of departments, including Economic Development, Elections, and certain Public Works agreements. On her second day at the County, Plaintiff received a phone call from Tom DeAge in Public Works, introducing himself and advising Plaintiff that he would be sending her a lease regarding a property and that he needed Plaintiff to review, approve, and return the lease the same day. [redacted], but the short turnaround made it near-impossible to communicate effectively with staff or redraft the lease.

23. Plaintiff quickly realized that the last-minute notice that a rush assignment was to be sent to Plaintiff – usually with just an hour or two's notice – was normal operating procedure for Public Works. When Plaintiff asked Mr. Billingsley the following week – her second week on

the job – if everything from Public Works was a rush, Mr. Billingsley replied to the effect, "It will if you let it be." Plaintiff was given no advice or direction on how to deal with the last-minute requests.

24. This began a pattern from the Public Works department of undermining Plaintiff by sending her pre-drafted legal documents, which were drafted by non-lawyers out of a selection of Board-approved templates. Additionally, Plaintiff was given very short timelines to review, including insufficient time to research legal issues, and approve, predicated on a Public Works-determined multi-party approval schedules.

25. Soon after, Tom Mattson, the Director of Public Works, sent an e-mail to many people including Plaintiff regarding an [redacted] he had written [redacted] and wanted to submit to the agenda process for the Board of Supervisors. In the e-mail, Mr. Mattson set forth a timetable for each person's review and approval, with Plaintiff's review and approval being one of the first, requiring Plaintiff to return [redacted] with her thoughts within two to three hours of receiving the draft.

26. With many assignments already on her desk, and not being familiar with the subject matter [redacted] or the applicable California laws, Plaintiff immediately informed Mr. Mattson with a "reply all" to the group that she would not be able to review the assignment prior to the imposed deadline. Plaintiff received no response or follow-up from Mr. Mattson and returned the assignment after finishing those she had received prior to [redacted] and being able to familiarize herself with the topic and associated legal issues. Plaintiff did not receive feedback on the work regarding [redacted] that she had provided to Mr. Mattson and the others included on the e-mail. Plaintiff did, however, overhear comments from the men in Public Works that "[Plaintiff] needs more time." These comments were made in a negative and mocking tone. The mocking tone specifically targeted Plaintiff's gender.

27. Plaintiff also began participating in Zoom teleconferences with many parties regarding [redacted] being handled by the Public Works department. In these Zoom calls, and without any private discussion or questioning, Mr. DeAge began publicly disparaging Plaintiff's legal opinion to non-attorney staff on the calls. Initially, Plaintiff phoned Mr. DeAge

privately and requested that he clarify any questions or concerns he had about her work with her or her supervisors rather than on a multi-party Zoom conference.

28. When Mr. DeAge's disrespectful and inappropriate criticisms continued, Plaintiff contacted one of Mr. DeAge's supervisors on January 6, 2022, inquired if Mr. DeAge equally and publicly criticized men's work and indicated the open criticism of her work by Mr. DeAge needed to stop. Shortly thereafter, Mr. DeAge ceased contacting Plaintiff for a month or two, but continued to "cc" her on Public Works assignment communications as well as multi-party staff Zoom communications.

29. On one matter, Plaintiff had been working extensively with Jared Fisher of Public Works on [redacted] when on January 7, 2022, [redacted]. Public Works staff were copied on the communications throughout, but Plaintiff primarily discussed this with Mr. Fisher. Plaintiff gave her advice regarding the issue. Again, and inappropriately, Mr. DeAge interjected and "replied all," outlining the process that he wanted undertaken to amend the contract. Mr. DeAge conveyed to the group that Plaintiff's legal advice should not be followed.

30. Plaintiff was never reprimanded or advised in any manner regarding her interactions with Public Works. That became an issue as neither Mr. Billingsley nor Mr. Miles provided any guidance when requested by Plaintiff. Mr. Billingsley was usually busy and Mr. Miles did not welcome interruptions – his demeanor and lack of meaningful response to inquiries made it clear that he did not want to get involved or assist Plaintiff with her assignments nor any difficulties she was encountering with County staff particularly male staff.

31. In January 2022, Plaintiff received primary responsibility for the County's Aviation Department, which was involved in a whistleblower lawsuit by the federal government against the County for non-compliance with the Federal Aviation Administration (FAA) regulations and accompanying federal law. (See *United States v. County of Humboldt*, Case No. 1:17-cv-05090-RMI, in the U.S. District Court, Northern District of California, San Francisco Division.) [redacted],

[redacted] This was outlined in the stipulation filed in federal court and stated that:

"8. On December 13, 2018, the FAA issued a report (the 'FAA Inspection Report') with conclusions, recommendations and action items based on its land-use inspection and submitted it to the Director of the County's Department of Aviation.

9. The FAA Inspection Report concluded that the County's land uses were not in accordance with its AIP grant assurances. The FAA directed the County to submit a corrective action plan as to each of the action items listed in the FAA Inspection Report.

10. On March 18, 2019 the County submitted a corrective action plan to the FAA. In its plan, among other items, the County agreed to do the following."…

32. Mr. Billingsley and Plaintiff were able to update the court, and based on the progress by the County to date the federal lawsuit against the County was dismissed without prejudice in early 2022, meaning if the County slipped back into its old ways, the FAA could refile the lawsuit.[1]

33. As part of the Aviation Department assignment, Plaintiff began regularly meeting with the Director of Aviation and his staff out at the California Redwood Coast-Humboldt County Airport (ACV), where the Director of Aviation, Cody Roggatz, had his office.

34. [redacted]

---

[1] *See* Humboldt County Airport Advisory Committee, Meeting Minutes, January 25, 2022, Item 4.K.

[redacted].

35. [redacted].

36. On December 20, 2021, prior to Plaintiff being assigned to the Aviation Department, the County Board of Supervisors approved an electrical and lighting upgrade to ACV by electrical contractor EcoGreen Solutions, Inc. ("EcoGreen"), which utilized a new program offered by the utility Pacific Gas & Electric (PG&E), an "On-Bill Financing Loan Program" to replace over 200 light fixtures that were either then unlit or needed to be upgraded to LED technology, which would save the County over $27,000 annually. First those savings repay the loan and then reduce the County's utility charges thereafter.[2]

37. [redacted]

[2] *See* Humboldt County Board of Supervisors, Action Summary, December 20, 2021, Items 1 and 2.

38. Shortly afterward, a Mr. Sean Meehan of Public Works accepted an invite to the meeting Plaintiff had set up. Not knowing who Mr. Meehan was at first, and knowing she had not invited him to this meeting, Plaintiff asked how he had managed to accept an invite. Mr. Meehan stated that he was the Deputy Director of Public Works, that this matter was under his purview for either he or his boss Mr. Mattson to attend any Public Works meeting, and that he had invited himself. Plaintiff explained that she was not ready for a meeting with a Deputy Director or Director at this point and was still trying to understand the County's project number system and gathering facts in order to have questions on the process. Plaintiff subsequently canceled the meeting because she felt she had lost control over a meeting that her own supervisor had suggested she conduct.

39. [redacted]

40. [redacted] Plaintiff reported her concerns a[redacted] to the FAA in light of the federal lawsuit [*United States*

*of America v. Humboldt County* Case No. 17-cv-05090] and the County's stipulation and corrective action plan filed in federal court on January 13, 2022.

41. On February 17, 2022, Public Works contacted Plaintiff over the [redacted] again.[3] [redacted] Plaintiff said she could not respond on behalf of Aviation or provide an opinion since she needed to further research this new issue of this new area regarding [redacted], have a discussion with the Director of Aviation on his position before being able to answer Mr. Bronkall.

42. [redacted][5]

43. In early 2022, Mr. Billingsley called a rare Office of County Counsel meeting and abruptly announced he had resigned, effective April 15, 2022. On April 13, 2022, Mr. Billingsley gave Plaintiff her six-month performance evaluation, which was largely positive (mainly ratings of four out of five) and resulted in a salary increase for Plaintiff to the highest salary level for a Deputy County Counsel. One of the lowest ratings was for "client relations," which Plaintiff had

---

[3] The County adopted an ordinance concerning small cell technology on November 29, 2022 and regulations went into effect in the Inland Zone on November 29, 2022. The ordinance and the regulations were part of a public hearing on at least two occasions before adoption.

[4] The pig farm was the subject of a grand jury investigation and public report as far back as 2000 – 2001.

[5] Items that had been brought to the attention of the County's Aviation Advisory Committee by a concerned citizen on March 3, 2021. These issues were also raised by the FAA in its December 13, 2018 FAA Inspection Report to the County of Humboldt. Volaire Aviation Consulting was also hired by the County to conduct an airport governance and sustainability study [as noted in the federal lawsuit *United States v. County of Humboldt*]. As noted by the concerned citizen on March 3, 2021 in a written statement to the County's Aviation Advisory Committee "Volaire obtained information about the county's pervasive revenue diversion."

always had high scores on in previous positions. When Plaintiff inquired about the low score, Mr. Billingsley only advised Plaintiff as he was leaving her office, "Beware Public Works."

44. The day after her first performance evaluation, [redacted].

45. Early in the week of April 18, 2022, Plaintiff went to Mr. Miles, who was now informally in charge of the Office of County Counsel, to express her concerns [redacted] (being her biggest concern), how Mr. Miles would like her to address the problems she was having with Public Works considering and/or openly rejecting her legal advice, and how the County's system of non-lawyers spending extensive time negotiating and drafting legal documents for licensed attorneys to merely edit was "backwards" and made her role in revising such agreements more difficult. In essence, non-lawyers are practicing law, and the Deputy County Counsels are solely editors if and when permitted by staff to do so.

46. After a few discussions regarding the problems with the Public Works Department did not appear to be getting through to Mr. Miles, Plaintiff asked him for permission to speak plainly. Mr. Miles said that she could, and Plaintiff responded, "Scott, if I had a penis, I would not be treated this way." Mr. Miles responded, "You're right, you are being hazed." Stunned at Mr. Miles' admission of inappropriate conduct – and no offer to remedy it – Plaintiff replied, "Hazing is not okay."

47. Mr. Miles instructed Plaintiff to file a claim against Public Works. Plaintiff explained she did not want to file a claim, believed a formal claim would not build good working relations, and that as a newer employee, Plaintiff was coming to her supervisor for assistance with institutional knowledge, new personalities, and how to navigate the situation.

48. Plaintiff stated to Mr. Miles that either she was not properly trained as to her role as a Deputy County Counsel or else staff was not properly trained as to her role, because there was not a common understanding of what she was supposed to do. Mr. Miles responded that “training” was under Human Resources, and that he and Plaintiff should meet with the Human Resources attorney in the office, Anne Nguyen to discuss.

49. On April 25, 2022, Plaintiff had a Zoom meeting with Mr. Miles and Ms. Nguyen to discuss possible training for Plaintiff and staff, so everyone could understand their various roles in the approval process and “stay in their own lanes.” Ms. Nguyen never brought up training and instead only pressed Plaintiff to file a claim. Ms. Nguyen followed up in an e-mail, thanking Plaintiff for meeting with her and Mr. Miles about “your interactions and difficulties with Public Works; more specifically, with Tom Mattson, Sean Meehan and Tom DeAge. I’m really sorry that you had to experience that and I completely understand your desire to just move forward, but I would really appreciate the opportunity – whenever you are ready – to talk in more detail about what has occurred to date so that a thorough and complete assessment can be made of any possible violations of statutes, regs, or County policy.” Then Ms. Nguyen set forth a course of action more appropriate for a discrimination claim, not a lack of proper training, and stated that all Public Works matters will be reassigned and no longer assigned to Plaintiff. Plaintiff responded to Ms. Nguyen and Mr. Miles that taking work away from her was not the assistance she came to them for and that training was never brought up by Ms. Nguyen in their Zoom meeting as Mr. Miles had led Plaintiff to believe it would. Plaintiff informed Ms. Nguyen and Mr. Miles that the County’s “Boyz club” or “hazing” culture was the problem, and bringing a claim would be pointless since no one would confront it. Plaintiff expressed she believed training was an appropriate way to address the issue.

50. On April 27, 2022, Plaintiff was contacted by Karen Clower from the County Administrative Office and encouraged to be a “team player” in revising the form Public Works required to perform services on any Aviation matters. [redacted]

[redacted]

51. On April 28, 2022, in response to Ms. Nguyen's e-mail documenting Plaintiff's refusal to file a claim against Public Works, Plaintiff reminded Ms. Nguyen she was brought in by Mr. Miles and reminded Ms. Nguyen that training had not been addressed and could improve the situation. Ms. Nguyen asked if Plaintiff had returned all Public Works assignments.

52. [redacted]

53. After the meeting with Ms. Nguyen and having had all Public Works matters taken away from Plaintiff, Mr. Miles assigned Plaintiff to review the agreements for DHHS's Behavioral Health unit's services to be provided through local entities. [redacted]. Plaintiff's concern regarding these issues only raised consternation with County staff, and as a result, her supervisor, Mr. Miles.

54. [redacted]

[redacted]

55. On or about June 15, 2022, Plaintiff received a mid-morning call informing her that her mother had passed away. Plaintiff was out the remainder of the week on bereavement leave. Several other days were taken off between this news and Plaintiff being terminated to address certain family issues.

56. On [redacted], Ms. Clower contacted Plaintiff via e-mail regarding prior legal advice Plaintiff had given [redacted]. Plaintiff corrected this inaccurate summation of her previous legal advice from Ms. Clower. Concerned by Ms. Clower's e-mail, Plaintiff went back to Mr. Miles in an e-mail asking for guidance since this twisted Plaintiff's legal advice and Plaintiff saw this as "hazing" by Public Works [redacted]

57. Mr. Miles responded to Plaintiff's concerns, "I understand your frustration. It is not lost on me based on my experience at the County of Humboldt" and advised Plaintiff to send another e-mail to Ms. Clower outlining Plaintiff's legal opinion, which Plaintiff promptly sent. Mr. Miles's e-mail then goes on to propose:

> "The reassignment of the Public Works assignment was in response to your concerns and to protect you from potential issues that you raised. I hope you understand that was done with your wellbeing and positive intent in mind. I want to mention that because I sensed a certain level of dissatisfaction with that change based on your email. Aviation and Public Works do frequently work closely and this will likely not be the last time that you would have to work on an item that spans between Aviation and Public Works. With that in mind, how

---

[6] *See* Humboldt County Airport Advisory Committee, Meeting Minutes: March 29, 2022, Item 5.E.; April 26, 2022, Item 4.D.; June 28, 2022, Item 4.C.iii; and, July 26, 2022, Item 4.G.

> would you feel about swapping the Aviation assignment to another attorney in this office? Again, I offer this up to be as supportive as I can to you and your success here at the County. I am open to discussion on this, but wanted to make this option available."

58. On July 18, 2022, Plaintiff responded to Mr. Miles's proposal to reassign the Aviation Department to Ms. Duke saying it would penalize Plaintiff for further challenging the "hazing" from Public Works that was now coming through Ms. Clower in CAO. Plaintiff expressed confusion at Mr. Miles's offer since the Director of Aviation had expressed that he was very pleased with Plaintiff's efforts to follow FAA regulations, and Plaintiff enjoyed the work she was doing with the Aviation Department. Mr. Miles responded that it was clear **to him** that communication channels between Plaintiff and himself were now strained, and Mr. Miles set up a meeting regarding Plaintiff's conduct with Human Resources.

59. On July 25, 2022, the Interim Human Resources Director, Zach O'Hanen reached out to Plaintiff prior to the scheduled meeting and welcomed her to provide additional information. Plaintiff explained the problems she encountered with non-lawyers practicing law at the County, Plaintiff's attempts to address, that Mr. Miles had said she was being "hazed" and that Plaintiff would appreciate any assistance Human Resources could provide her in getting the "hazing" to cease.

60. On July 27, 2022, Plaintiff met with Director of Human Resources Zach O'Hanen, someone else from Human Resources named Cassidy, Mr. Miles and Ms. Duke to discuss the hazing she had been experiencing, her concern about non-lawyers drafting legal documents, her role when not allowed to edit such documents drafted by non-lawyers, and Mr. Miles calling Plaintiff disrespectful and unprofessional for continuing to challenge what Mr. Miles called the "hazing" Plaintiff was receiving. Mr. O'Hanen asked Plaintiff if it was her opinion that she was being discriminated against, mentioned several other legal "buzz words" asking for Plaintiff's legal opinion on her own situation, and told Plaintiff in this meeting that she did not understand government employment. After an hour of receiving no assistance from Human Resources, Plaintiff stated she completely understood they were unwilling to help her, thanked Human Resources for meeting with her, said she would be retaining her own outside help to advise her on

whether filing a formal complaint was her best remedy, and Plaintiff left the meeting to return to work.

61. On August 1, 2022, Human Resources sent a memorandum to Plaintiff mischaracterizing their meeting on July 27, 2022; Plaintiff was out of the office at the time. When Plaintiff returned and received Mr. O'Hanen's e-mail, Plaintiff notified Human Resources and her supervisors she was retaining legal representation, restated she had been seeking assistance from Human Resources for what Mr. Miles called "hazing," but Mr. Miles would do nothing about, and documented Human Resources offered no assistance to Plaintiff.

62. On August 26, 2022, Plaintiff received "County Actions in Response to Concerns" – from Mr. O'Hanen which provided Plaintiff with a written outline of her job duties, only slightly different from the posting she had responded to when applying for her position. Mr. O'Hanen stated in this e-mail that he and Mr. Miles would request a meeting with Tom Mattson to discuss Plaintiff's concerns. Plaintiff was never informed whether or not such a meeting with Mr. Mattson took place or if so, what outcomes occurred from such a meeting.

63. The last episode regarding non-lawyers drafting legal documents and not permitting Plaintiff to edit or change them before she was terminated, involved [redacted] staff decided was appropriate in a situation, staff reported spending two years of time working on the [redacted] before submitting for County Counsel's input (County Counsel acts only as a compliance and cite check). Staff inserted the facts into a template as they saw appropriate and objected when Plaintiff thought [redacted] was not the way to go.

64. Anticipating a firestorm from staff after fully researching the issue, Plaintiff e-mailed Ms. Duke and Mr. Miles, explained the situation and requested their support anticipating a push back from the non-lawyers. Mr. Miles did not respond to Plaintiff. Plaintiff was told by Ms. Duke that Plaintiff had their support, Plaintiff later received pushback from staff, and said she had her supervisors' support, and Mr. Miles subsequently, in a complete about-face, openly criticized Plaintiff for not doing as they had "agreed." Plaintiff stated she did follow her supervisors' advice of support, could no longer work in the openly hostile and impossible environment that Mr. Miles

had created for her to work in and requested a meeting with Mr. Miles, the County Administrative Officer, and her legal representation.

65. Having received no response from Mr. Miles the next morning, Plaintiff requested Mr. Miles respond to her request for a meeting by Thursday, September 22, 2022 at 5:00 p.m. Plaintiff stated she took seriously being pulled into Human Resources for being on the receiving end of "hazing," and that she also takes non-lawyers practicing law seriously. Plaintiff asked for a meeting with Mr. Miles and the County Administrative Office, to discuss the issue of the unauthorized practice of law by non-lawyer County staff.

66. At 5:00 p.m. on Thursday September 22, 2022, despite repeated requests by Plaintiff for an answer, Mr. Miles did not answer whether he would set up such a meeting. Plaintiff informed Mr. Miles that his lack of a response left her no choice but to file an ethics complaint against him and Ms. Duke with the California State Bar for allowing non-lawyer County staff to practice law.

67. Only after Plaintiff informed Mr. Miles that she would be filing an ethics complaint against him and Ms. Duke with the California State Bar did Mr. Miles inform Plaintiff the County had retained an outside law firm to look into her concerns. Having not been told this before or contacted by any outside law firm for an interview regarding her concerns, Plaintiff informed Mr. Miles, "The time for talking is over," that she was then drafting the complaint, and would probably have the complaint filed with the State Bar by morning.

68. Plaintiff reported to work as usual at 8:00 a.m. the next morning on Friday, September 23, 2022. At 11:30 a.m., Plaintiff received an **e-mail** from Mr. O'Hanen informing her that her at-will employment with the County of Humboldt was terminated for alleged repeated instances of disrespect to her supervisor. The County failed to pay Plaintiff all wages she was owed at the time of her termination.

69. Plaintiff consistently documented issues she had with the Public Works and DHHS department staff "hazing" her, continually requested training for herself and staff regarding their various roles for a common understanding, but received no assistance from her supervisors. Mr. Miles often commented he would have provided the same legal advice Plaintiff had, but offered

no assistance to Plaintiff in how to navigate County staff personalities. Mr. Miles and Ms. Duke offered no assistance, institutional knowledge, or training opportunities despite Plaintiff's repeated requests. Certain of Plaintiff's legal analysis and conclusions were overruled by Mr. Miles not on the basis of the law, but due to staff demands, historical practice of the County whether legally compliant or not. Plaintiff was never informed of the outcomes of meetings Mr. Miles and/or Mr. O'Hanen informed Plaintiff they would have; never contacted by an outside firm looking into her concerns to interview her; and, certain activities Plaintiff was asked to approve violated the law and she refused to approve, including, but not limited to:

- Rampant, continued airport revenue use by the Public Works Department and supported by the County Administrative Office.
- [redacted].[7]

70. Other matters were assigned to Plaintiff, but she was never provided the information necessary despite repeated requests from Tom DeAge of Public Works and Vonnie Fierro of DHHS, including but not limited to [redacted]

71. The job posting dated November 1, 2022 to replace Plaintiff's position provides for the following diminished and more accurate "What You'll Do" job duties for a "Deputy County Counsel II-IV" after Plaintiff's termination:

- Advise County Departments;

[7] The FPPC opinion dated April 22, 2022 can be found on the FPPC website.

- Review ordinances, resolutions, contracts and other documents for legal sufficiency;
- Prepare appellate briefs.

72. On September 30, 2022, after her termination by email and failure to be paid her earned wages by the County, Plaintiff received a Notice to Cease and Desist from the County's outside counsel informing her that she was to immediately stop "(1) threatening to lodge complaints whether they be criminal, administrative or disciplinary, and (2) disclosing confidential and/or attorney-client privileged information." The County was informed on October 6 that their threats were without merit and that their threats should cease.

73. First, Plaintiff's statements are not in violation of California Rules of Professional Conduct Rule 3.10; they were not threats as she did not make any demands in conjunction with her statement, nor were her statements made in order to obtain an advantage in a civil dispute. These were simply statements intended to notify the County that she would be pursuing a course of action. She requested nothing in return to halt the reporting to the State Bar of California, and she had no intention other than to report what Plaintiff believed to be conduct in violation of the Rules of Professional Conduct.

74. The County was in violation of Labor Code Section 201(a) as it failed to immediately pay Plaintiff her wages earned and unpaid at the time of her discharge on September 23, 2022. That amount is for wages plus payment for any unused or accumulated vacation, annual leave, holiday leave. While it appears that the County paid a portion of the wages to Plaintiff through direct deposit there are amounts left unpaid for her accrued vacation, annual leave, holiday leave etc. In addition, because of the violation of the Labor Code, under Section 203(a), Plaintiff's wages have continued as a penalty from September 23, 2022 through October 17, 2022. This is now a penalty which means that Plaintiff is entitled to her wages including payment of any withholdings which amounts to $62.92 per hour. This means that that Plaintiff is additionally owed $4781.92 through October 17, 2022. Penalties will continue to accrue at the rate of $62.92 per hour until the County pays Plaintiff all her wages and accrued benefits. To date, it is unclear whether or not Plaintiff has received all of her wages and accrued benefits.

75. The County, in an apparent attempt to further its mistreatment of Plaintiff, has also denied Plaintiff's claim for unemployment and wrongfully reported to the State of California that Plaintiff was not only employed by County Counsel's office but also employed by the County Auditor. County HR also wrongfully reported that Plaintiff was repeatedly warned that she would be terminated. That is a fabrication and not supported by Plaintiff's personnel file.

76. Plaintiff requested her personnel file on January 13, 2023. She was informed by Mr. O'Hanen on January 19, 2023 that the County has a "standard process for former employees to receive copies of their personnel file." When asked for the "standard" process in writing, Mr. O'Hanen failed to provide a response. The personnel file was finally provided on February 7, 2023.

77. The County has wrongfully terminated Plaintiff in retaliation for her reporting of wrongdoing by County staff and in retaliation for her involvement in whistleblowing activities, as outlined above, that are protected by Labor Code Section 1102.5. The actions taken by Plaintiff were clearly that of a whistleblower regarding the potential misuse of public funds by County staff, the unauthorized practice of law by staff, and her reporting and documenting of these facts to her superiors.

78. Plaintiff met with a local reporter regarding her claim against the County of Humboldt. Plaintiff provided examples of corruption and systemic abuse within the County by the Board of Supervisors and County staff – namely the misuse of public funds. An article has appeared in a local media new outlet.

79. On May 25, 2023, the County instituted an action in the Superior Court of the State of California, County of Humboldt for preliminary and injunctive relief against both Plaintiff **and** her attorney Cyndy Day-Wilson (counsel herein), alleging that the posting of Plaintiff's claim for damages against the County on a local news outlet by the local new outlet itself, the Lost Coast Outpost, at the end of an article written about Plaintiff's claims against the County for misuse of public funds, constituted a breach of the attorney-client privilege and/or confidentiality. This is a further attempt by the County to silence Plaintiff – alleging that Plaintiff cannot repeat **anything** from her **employment** with the County – as well as create a conflict between her and her attorney.

## FIRST CAUSE OF ACTION

**(First Amendment Retaliation for Exercising Free Speech with Regard to Protected Whistleblowing Activity in Violation of 42 U.S.C. § 1983)**

80. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 79 as though set forth herein in full.

81. Plaintiff engaged in freedom of speech protected under the First Amendment to the United States Constitution on a matter of public concern – [redacted]. Plaintiff spoke to local media regarding these issues; an article was published detailing Plaintiff's claims.

82. Plaintiff's actions constituted a right to freedom of speech on a matter of public concern, [redacted]. She reported these issues to not only her own supervisor Scott Miles, Interim County Counsel, but also to the FAA, the California State Bar, the Humboldt County Director of Aviation, and Humboldt County Human Resources. Thus, Plaintiff's actions were protected by the First Amendment.

83. As a result of Plaintiff's First Amendment activity, Defendants, acting under color of law and in concert with one another, engaged in adverse actions against the Plaintiff which were and continue to be reasonably likely to deter protected activity under the First Amendment. Such actions included removing Plaintiff from her role advising certain County departments; stating that she was being "hazed" by one of the departments and refusing to assist her; creating and maintaining a hostile and abusive work environment; and terminating Plaintiff's employment immediately after she reported that she would be filing a State Bar complaint regarding the continued practice of non-lawyers practicing law. Plaintiff moved to Humboldt County specifically for the Deputy County Counsel position; she had spent the prior years of her career primarily in Texas. Terminating Plaintiff via e-mail less than a year after she started the position has severely hindered her future employment prospects.

84. All Defendants participated in and caused this retaliatory action.

85. Plaintiff's protected activity – her freedom of speech – was a substantial or motivating factor behind Defendants' adverse action, including her termination.

86. Absent the protected activity, Plaintiff would not have been terminated from her position as Deputy County Counsel IV.

87. As a result, Defendants, and each of them, are liable under 42 USC §1983 for damages, including past and future general damages for emotional distress, anguish, frustration, humiliation, grief, harm to reputation, harm to career, loss of job opportunity, as well as past and future special damages, including loss of income, benefits, seniority, pension, all in sums to be proven at trial, equitable relief, attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**(Violation of California Labor Code Section 1102.5 state whistleblower protections)**

88. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 87 as though set forth herein in full.

89. California Labor Code section 1102.5 prohibits an employer from retaliating "against an employee for disclosing information, or because the employer believes that the employee disclosed or may disclose information, to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance, or for providing information to, or testifying before, any public body conducting an investigation, hearing, or inquiry, if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." (Cal. Lab. Code § 1102.5, subd. (b).)

90. Additionally, "[a]n employer, or any person acting on behalf of the employer, shall not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation." (Cal. Lab. Code § 1102.5, subd. (c).)

91. "A report made by an employee of a government agency to their employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b)." (Cal. Lab. Code § 1102.5, subd. (e).)

92. Plaintiff's job duties were to: (1) Advises County departmental management concerning their respective duties, powers, functions and obligations; (2) Performs a wide range of legal work in such areas as juvenile, child welfare, criminal, public guardian, special districts and mental health; (3) Researches legal problems and prepares opinions, ordinances, resolutions, contracts, leases, permits and other legal documents; (4) Prepares and tries routine to difficult cases, often involving a specialized body of law; (5) Represents the County in administrative hearings before boards and commissions and state and federal agencies; (6) Assists other attorneys in all phases of legal work; (7) Attends County departmental, board and commission meetings to provide legal advice on a variety of matters; (8) Investigates and prepares reports regarding claims against the County; (9) Reviews ordinances, resolutions, contracts and other documents for legal sufficiently; recommends modifications as required; (10) Maintains accurate records and files and compiles reports of work performed; (11) Monitors legal developments, including proposed legislation and court decisions; evaluates their impact on County operations and recommends appropriate action; and (12) Directs the work of professional and support staff as assigned.

93. Plaintiff reported [redacted] to then-County Counsel Jefferson Billingsley; Interim County Counsel Scott Miles; Assistant County Counsel Natalie Duke; Director of Human Resources Zach O'Hanen; and she attempted meet with and to report this to the County Administrative Office.

94. As a result of Defendants' actions Plaintiff has suffered a loss of employment and related benefits; loss of job opportunity; damage to her reputation and ability to find other work; severe emotional distress; insomnia; depression; worry; humiliation; anguish; and anxiety.

**THIRD CAUSE OF ACTION**
**(Wrongful Discharge in Violation of Public Policy)**

95. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 94 as though set forth herein in full.

96. Plaintiff was employed by the County of Humboldt as a Deputy County Counsel IV.

97. The County of Humboldt discharged Plaintiff on September 23, 2022.

98. Plaintiff's reports and attempts to report [redacted] and her filing of a complaint with the California State Bar were substantial motivating factors in Plaintiff's discharge.

99. Plaintiff has been harmed due to the loss of income; the loss of job opportunities; harm to her reputation; extreme difficulty finding new employment; loss of retirement; and loss of promotions.

100. Plaintiff's discharge was a substantial factor in causing Plaintiff's harm.

**FOURTH CAUSE OF ACTION**
**(Violation of California Government Code § 12940(a) – Gender Discrimination)**

101. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 100 as though set forth herein in full.

102. Plaintiff experienced "hazing" behaviors during her employment as a Deputy County Counsel. When she reported to her supervisor, Mr. Miles, that she would not be receiving such treatment if "[she] had a penis," he responded, "you're right, you are being hazed."

103. Despite the treatment by County staff, Plaintiff's supervisor did nothing to stop the hazing and indeed instead removed Plaintiff from assignments.

104. This treatment culminated in Plaintiff's discharge from the County on September 23, 2022.

105. Plaintiff's gender was a substantial motivating factor in the disparate treatment and the County's decision to discharge Plaintiff.

106. Plaintiff was harmed by her discharge from the County through the loss of income; the loss of job opportunities; harm to her reputation; extreme difficulty finding new employment; loss of retirement; and loss of promotions.

107. The County's disparate treatment of Plaintiff and decision to discharge Plaintiff was a substantial factor in causing Plaintiff's harm.

**FIFTH CAUSE OF ACTION**
**(Violation of California Government Code § 12940(h) – Retaliation)**

108. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 107 as though set forth herein.

109. Plaintiff engaged in protected activity under the Fair Employment and Housing Act by reporting to her supervisor, Mr. Miles, that she was being "hazed" and that she would not be being treated that way by County staff "if [she] had a penis."

110. Plaintiff was discharged by the County on September 23, 2022.

111. Plaintiff's reporting of gender discrimination was a substantial motivating reason for Plaintiff's discharge.

112. Plaintiff was harmed by her discharge from the County through the loss of income; the loss of job opportunities; harm to her reputation; extreme difficulty finding new employment; loss of retirement; and loss of promotions.

113. The County's decision to discharge Plaintiff was a substantial factor in causing Plaintiff's harm.

**SIXTH CAUSE OF ACTION**
**(Violations of California Labor Code Sections 201 and 203)**

114. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 113 as though set forth herein in full.

115. "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately." (Cal. Lab. Code § 201, subd. (a).)

116. The County did not pay Plaintiff for her wages earned and unpaid at the time of her discharge on September 23, 2022.

117. "If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.3, 201.5, 201.6, 201.8, 201.9, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." (Cal. Lab. Code § 203, subd. (a).)

118. Plaintiff's daily rate is $503.36, 30 days amounts to $15,100.80.

**SEVENTH CAUSE OF ACTION**
**(Violation of California Civil Code Section 52.1 The Tom Bane Civil Rights Act)**

119. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 118 as though set forth herein in full.

120. Plaintiff engaged in freedom of speech protected under the First Amendment to the United States Constitution on a matter of public concern [redacted]. Such speech included the attempted reporting of [redacted] to the Board of Supervisors through a closed session – personnel review – in a lawful manner pursuant to the Brown Act.

121. Plaintiff's actions constituted a right to freedom of speech on a matter of public concern. Plaintiff's actions did not disrupt the workplace or the Defendant's mission – [redacted] Thus, Plaintiff's actions were protected by the First Amendment.

122. As a result of Plaintiff's First Amendment activity, Defendants, in concert with one another, engaged in adverse actions against the Plaintiff which were and continue to be reasonably likely to deter protected activity under the First Amendment. Such actions included placing Plaintiff on administrative leave without due process of law; preventing Plaintiff from providing information regarding [redacted] to the Board of Supervisors; preventing Plaintiff from ensuring that his statutory duties were carried out in a legal manner; depriving Plaintiff of his statutory and/or contractual rights to due process; creating and maintaining a hostile and abusive work environment; and, ultimately causing Plaintiff's placement on administrative leave and beginning an investigation – a disciplinary action impacting his continued employment as County Counsel and his future employment elsewhere in violation of statutory due process requirements.

123. Defendants participated in and caused this retaliatory action.

124. Plaintiff's protected activity – her freedom of speech, was a substantial or motivating factor behind the County's termination of Plaintiff.

125. Absent the protected activity, Plaintiff would not have been discharged from her employment in violation of California Civil Code Section 52.1.

126. As a result, Defendants, and each of them, are liable under The Tom Bane Civil Rights Act for damages, including past and future general damages for emotional distress, anguish, frustration, humiliation, grief, harm to reputation, harm to career, loss of a job opportunity, as well as past and future special damages, including loss of income, benefits, seniority, pension, all in sums to be proven at trial, equitable relief, attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**(Violation of Title VII – Gender Discrimination; Hostile Work Environment; Harassment)**

127. Plaintiff hereby incorporates the allegations contained in paragraphs 1 through 126 as though set forth herein in full.

128. Title VII of the Civil Rights Act of 1964 provides that "it shall be an unlawful employment practice for an employer…to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such an individual's race, color, religion, sex, or national origin." (42 U.S.C. § 2000e-2(a)(1).)

129. This covers not only "terms" and "conditions" in the narrow contractual sense, but "evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment." (*Meritor Savings Bank, FSB v. Vinson* (1986) 477 U.S. 57, 64.)

130. "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." (*Harris v. Forklift Systems, Inc.* (1993) 510 U.S. 17, 21.)

131. The County created an abusive working environment based on the extensive "hazing" that was perpetrated against Plaintiff by County staff in the form of refusal to take her legal advice; disparagement to other employees regarding her abilities; and repeated and constant requests for her to complete tasks in incredibly short timeframes, resulting in increased stress at work and an inability to complete her job to the best of her capabilities.

132. Despite repeated requests that issues with Plaintiff's legal opinions or advice be brought to her or her supervisor, Tom DeAge continued openly criticizing Plaintiff's legal

conclusions and advice, and Tom Mattson went so far as to tell the Director of Aviation in the hallway after a meeting with the County Administrative Office that Aviation was "getting bad legal advice" from its counsel. Mr. Mattson did not provide any facts or laws to support this comment.

133. When Plaintiff complained to her supervisor and Human Resources about this treatment and conditions, she was rebuffed, told that she didn't have enough experience in or understanding of governmental agencies – despite working in them for over ten years – and was removed from her role as the Deputy County Counsel assigned to Public Works.

134. When Plaintiff stated to her supervisor Scott Miles that if "[she] had a penis, [she] would not be treated this way," he responded, "You're right, you are being hazed." Mr. Miles took no steps to remedy the situation other than removing Plaintiff from projects, which she viewed as a de facto demotion. Instead of offering support or guidance to a new employee, Mr. Miles merely suggested that Plaintiff file a formal complaint against Public Works. Not wanting to create further strife with the department – and knowing nothing would come of such a complaint – Plaintiff again requested that her supervisor help her resolve the situation. Plaintiff stated during a meeting with Mr. Miles and Anne Nguyen, a County HR attorney, that the "boyz club" or "hazing" culture at the County was the issue, and that her filing a formal complaint would do nothing to resolve it, since no one at the County was willing to confront it. Plaintiff stated that she believed training for herself or departmental staff in County Counsel's role would be a helpful step, but she was rebuffed.

135. Plaintiff was instead repeatedly encouraged to be a "team player" when it came to Public Works.

136. Plaintiff was subjected to "hazing" and disparaging comments that were motivated by her gender. When she brought up her perception that she would not be receiving such treatment "if [she] had a penis" to her supervisor, he agreed that her gender was a factor in the treatment. Instead of attempting to resolve the situation and stop the disparate treatment, Plaintiff's supervisors took work away from her and stated that she simply didn't understand how public agencies operated, despite her extensive experience in that arena. Human Resources similarly

provided no support and merely furthered the issues. Plaintiff has suffered harm from this treatment in the form of emotional distress, anguish, frustration, humiliation, grief, harm to reputation, harm to career, loss of a job opportunity, as well as past and future special damages, including loss of income, benefits, seniority, pension, all in sums to be proven at trial, equitable relief, attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Cathie Childs prays for judgment in his favor and against Defendants, jointly and severally, on all causes of action as follows:

1. For general damages in sums to be proven at trial;
2. For special damages in sums to be proven at trial;
3. For declaratory relief as prayed for above;
4. For attorneys' fees and costs of suit; and
5. For such other and further relief as the Court deems just and proper.

Dated: June 8, 2023

LAW OFFICE OF CYNDY DAY-WILSON

Cyndy Day-Wilson, Esq.
Attorney for Plaintiff Cathie Childs